# In the United States Court of Federal Claims

No. 18-785C
(Filed Under Seal:  September 13, 2018)
(Reissued for Publication:  September 19, 2018)*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CRITERION SYSTEMS, INC., * | |
| * | |
| Plaintiff, * | Postaward Bid Protest; RCFC 52.1; Cross-Motions for Judgment on the Administrative Record; Clarification; Informality; Irregularity |
| * | |
| v. * | |
| * | |
| THE UNITED STATES, * | |
| * | |
| Defendant. * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

David T. Hickey, Washington, DC, for plaintiff.

Jimmy S. McBirney, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this postaward bid protest, plaintiff Criterion Systems, Inc. ("Criterion") alleges that the contracting officer ("CO") improperly evaluated its proposal in connection with a solicitation issued by the United States General Services Administration ("GSA") for information technology services.  In its protest, Criterion focuses on whether the CO was obligated to take remedial steps to address its failure to include the appropriate documentation verifying the points it claimed for having an acceptable cost accounting system ("CAS").  Specifically, Criterion argues that the CO failed to abide by the terms of the solicitation and also abused his discretion by neither seeking clarification regarding the missing information nor waiving the error as an informality and minor irregularity.  The court is now presented with Criterion's motion for judgment on the administrative record as well as defendant's cross-motion for judgment on the administrative record.  For the reasons explained below, the court denies Criterion's motion and grants defendant's cross-motion.

---

\*  The court initially issued this Opinion and Order under seal with instructions for the parties to propose any redactions.  The parties informed the court that no redactions were necessary to the Opinion and Order.

# I. BACKGROUND

## A. Solicitation

On June 20, 2016, the GSA issued solicitation QTA0016GBA000 to procure information technology services for the government.  Administrative R. ("AR") 4, 14.  Specifically, the GSA sought proposals for the Alliant 2 Small Business Governmentwide Acquisition Contract, a multiple-award, indefinite-delivery, indefinite-quantity contract.  Id. at 4.  An awardee under the solicitation would become eligible to receive task orders under the contract.  Id. at 262-63.  The GSA specified that proposals were due by October 7, 2016.  Id. at 258.

### 1.  Proposal Format and Contents

The GSA required that offerors submit their proposals on one digital video disc ("DVD").  Id. at 109.  The DVD was to contain separate folders for each volume of the proposal—general; responsibility; cost-price; past performance; relevant experience; organizational risk assessment; and systems, certifications and clearances.  Id.  Within the general folder, offerors were required to include, among other items, a completed copy of the Document Verification and Self Scoring Worksheet ("Scoring Worksheet").  Id.  The GSA also instructed offerors to submit a paper copy of the completed Scoring Worksheet.  Id.  In the Scoring Worksheet, offerors were required to claim points for meeting specific criteria in the solicitation.  See id. at 116.  For every claimed point, an offeror was required to include supporting documentation in the proposal showing that it met the relevant criteria.  Id.

For an offeror claiming the 5500 available points for having an acceptable CAS, the GSA explained that substantiating those points required the offeror to show that it was CAS certified.  Otherwise stated, the offeror needed to

> provide verification from the Defense Contract Audit Agency
> [("DCAA")], Defense Contract Management Agency [("DCMA")],
> or any Cognizant Federal Agency [("CFA")] of an acceptable
> accounting system that has been audited and determined adequate
> for determining costs applicable to the contract or order in
> accordance with [Federal Acquisition Regulation ("FAR")] 16.301-
> 3(a)(3).

Id.  To satisfy the verification requirement, the GSA mandated that the offeror (1) aver that its accounting system had no material changes since the last audit; (2) list its Data Universal Numbering System code and Commercial and Government Entity code; (3) submit contact information for the entity's representative at the DCAA, DCMA, or CFA; and (4) provide a Standard Form 1408 or a letter from the auditing agency attesting that the entity's accounting system had been audited and determined adequate.  Id.  In lieu of submitting the Standard Form 1408 or agency letter, an offeror could rely on the GSA to contact the appropriate agency for verification that the offeror's accounting system had been audited and determined adequate.  Id.  An offeror who chose this latter option was not entitled to the 5500 points if the GSA, after

making a reasonable effort, was unable to obtain verification that the offeror's CAS had been audited and determined adequate.  Id.

Before proposals were due, the GSA made clear that an offeror claiming the 5500 points for possessing an acceptable CAS must have had a federal agency conduct the audit and make the adequacy determination.  Specifically, the GSA shared the following questions and responses with all offerors:

|  | Question | Response |
|---|---|---|
| 1.43 | Will a completed SF1408 completed by a licensed Certified Public Accountant (CPA) [be] acceptable certification for claiming points associated with [an] audited/adequate cost accounting system? | No.  L.5.4.1 is clear on this matter. |
| 1.45 | Can the determination of accounting system adequacy be determined by a third-party Certified Public Accounting (CPA) firm[?] | No[.] |

Id. at 441.  The GSA's responses, coupled with the language of the solicitation, reflect that information from a Certified Public Accountant ("CPA") could not substantiate an offeror's claim to points for having a certified CAS.[1]

## 2.  Evaluation Process

The GSA explained in the solicitation that the awardees would be selected based on which offerors presented the highest technically rated proposals with a fair and reasonable price. Id. at 146.  Before outlining its evaluation process, the GSA explained that it intended to "strictly enforce all of the proposal submission requirements" and further explained that a "[f]ailure to comply with these requirements will result in an Offeror's proposal being rejected . . . ." Id. Nonetheless, the GSA, by virtue of incorporating FAR 52.215-1 into the solicitation, reserved the CO's right to waive informalities or minor irregularities.  Id. at 361.  For evaluating proposals, the GSA set forth a step-by-step review process for each proposal.  This process consisted of the following steps, which the CO was required to perform in the order noted below:

- Step One:  The CO preliminarily identifies the top eighty proposals by sorting all of the submissions from the highest score to the lowest score based on the offerors' Scoring Worksheets.  Id. at 146.  The CO then reviews the top eighty proposals in accordance with the following steps.

- Step Two:  For each proposal, the CO verifies that a support document exists for all of the evaluation elements included on the Scoring Worksheet.  Id. at

---

[1]  In the solicitation, the GSA initially included a role for CPA:  an offeror with a federal audit that was more than five years old was required to provide an audit by a CPA showing that there had been no material changes since the last audit completed by the DCAA, DCMA, or CFA.  AR 135.  This provision was removed before proposals were due.  Id. at 222.

146-47.  Any discrepancies at this stage are treated as clarifications.  Id. at
147.

- Step Three:  The CO conducts an acceptability review to determine whether
  each offeror submitted all of the requested information for the general volume
  in the specified manner.  Id.  If a proposal does not pass the review, the
  proposal is replaced by the next highest scoring proposal that passes the
  acceptability review.  Id.

- Step Four:  The CO determines whether a support document substantiates
  every claimed point on the Scoring Worksheet.  Id.  If the claimed points are
  not substantiated, then (1) those points are deducted, (2) the proposals are
  resorted based on the revised score, and (3) the proposal is replaced if its new
  score is below the cutoff for the top eighty proposals.  Id.

- Step Five:  The CO evaluates whether the offeror proposed fair and reasonable
  pricing.  Id.  An offeror who fails to provide such pricing is eliminated from
  the competition.  Id.

The GSA explained that the process would continue until the top eighty proposals (or more in the
case of a tie for the last spot) are identified, at which point evaluations cease and contracts are
awarded to the offerors of those proposals.  Id.  Offerors were also informed that the GSA did
not intend to hold discussions but would conduct clarifications as necessary.  Id. at 146.  As
explained in the Source Selection Decision Memorandum, the GSA adhered to above process for
evaluating proposals and did not hold discussions.  Id. at 466-68.

### B.  Criterion's Proposal

Criterion claimed 70,600 points on the Scoring Worksheet that it included with its
proposal.  Id. at 495.  Of particular import to its protest, Criterion claimed 5500 points for having
a certified CAS.  Id.  In support of the claimed points, Criterion provided two documents.  In the
first document, which is labeled "Contact Information for Cognizant Auditing Agency,"
Criterion provided contact information for an accountant at CohnReznick, a private accounting
firm.  Id. at 1356.  The second document, an April 20, 2016 report prepared by CohnReznick, is
titled "Independent Accountant's Review of Accounting System [i]n Accordance [W]ith the
Preaward Survey of Prospective Contractor Accounting System – Standard Form 1408."  Id. at
1349.  In a letter included with the report, CohnReznick explained that it (1) reviewed Criterion's
accounting system based on the criteria prescribed in Standard Form 1408 and (2) found nothing
"that caused [the accounting firm] . . . not to believe that Criterion Systems, Inc. had maintained,
in all material respects, an adequate accounting system" based on Standard Form 1408.  Id. at
1351.  The report also contained a completed Standard Form 1408 signed by a CohnReznick
accountant.  Id. at 1352.

While evaluating Criterion's proposal, the CO reached the fourth stage of the evaluation
process:  verifying the offeror's claimed points are substantiated by materials in the proposal.
See id. at 1386.  At this stage, the CO deducted 5500 points from the Criterion's proposal
because the company provided insufficient evidence of having a certified CAS.  Id. at 1400.

Specifically, the CO wrote in the evaluation worksheet that Criterion "provided a[n] SF1408 in which a private independent CPA performed the audit," and that "[n]o verification from the [DCAA, DCMA,] or any [CFA] of an acceptable accounting system that has been audited and determined adequate" was submitted. Id. The CO also noted on the worksheet that Criterion failed to provide contact information for the government agency that conducted Criterion's CAS audit. Id. Given these omissions, the CO concluded that Criterion was not entitled to the 5500 points. After deducting those points, Criterion's score fell below the award cutoff such that the CO did not review the company's materials substantiating the claimed points for relevant experience or past performance. Id. at 1386.

On February 14, 2018, the GSA posted an award notice reflecting that the agency selected eighty-one awardees.[2] Id. at 480-88. Criterion was not listed as an awardee. Id. Criterion promptly requested a debriefing. Id. at 1498. In a March 9, 2018 debriefing letter, the CO explained why he deducted points and how those deductions placed Criterion below the award cutoff. Id. at 3204-07.

After receiving the debriefing letter, Criterion sent a letter to the GSA on March 12, 2018, addressing the CO's explanation. Id. at 1797. Criterion explained that it "does have a DCAA approved accounting system" and attached a copy of an audit from the DCAA. Id. Criterion further explained that it submitted the third-party audit because the company was under the impression that it only needed to demonstrate that there had been no material changes to the accounting system since the last audit.[3] Id. After noting its successful participation in the predecessor contract, Criterion asked that the GSA reinstate the 5500 points. Id.

On March 14, 2018, Criterion filed a protest with the GSA, id. at 1787, which was denied shortly thereafter, id. at 1825-30. Subsequently, Criterion filed a protest with the United States Government Accountability Office ("GAO"), id. at 1831, which the GAO dismissed because protests concerning the same procurement were pending before this court, id. at 1877.

### C.  Procedural History

After its protest was dismissed at the GAO, Criterion filed its protest with the court on June 4, 2018. In its complaint, Criterion alleges that the CO failed to follow the terms of the solicitation, abused his discretion by not seeking clarification concerning the missing information, and acted arbitrarily and capriciously by not waiving Criterion's lack of a government audit as an informality and minor irregularity. Based on those allegations, Criterion requests that the court (1) enter a declaratory judgment recognizing that the CO erred by not seeking clarification or waiving the requirement for a government audit; (2) issue a permanent

---

[2]  The agency exceeded its stated target of eighty awardees as a result of a four-way tie for the seventy-eighth position. AR 1774.

[3]  Criterion's belief appears to be premised on the deleted solicitation provision, discussed above, see supra note 1, in which the GSA stated that an offeror with old audit verification materials must also submit a CPA audit showing no material changes since the offeror's DCAA, DCMA, or CFA audit.

injunction directing the CO to seek clarification or waive the requirement for a government audit, reevaluate Criterion's proposal, and conduct a best value analysis as contemplated by the solicitation; and (3) award Criterion its costs in pursuing this action.  Pursuant to the schedule they proposed, the parties briefed their respective motions for judgment on the administrative record, and the court held oral argument on September 12, 2018.  The parties' motions are now ripe for adjudication.

## II.  LEGAL STANDARD

In ruling on motions for judgment on the administrative record pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).  Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record."  Bannum, 404 F.3d at 1356.

When adjudicating a motion for judgment on the administrative record, the court reviews challenged agency actions pursuant to the standards set forth in the Administrative Procedure Act.  28 U.S.C. § 1491(b)(4) (2012).  Specifically, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Under this standard, the court

> may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  A court reviews a challenge brought on the first ground "to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis."  "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citations omitted) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)); accord Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) ("The arbitrary and capricious standard . . . requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.").

Procurement officials "are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process."  Impresa, 238 F.3d at 1332 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)).  Thus, the court's review of a procuring agency's decision is "highly deferential."  Advanced Data Concepts, 216 F.3d at 1058; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)

("The court is not empowered to substitute its judgment for that of the agency."). Furthermore, a "protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater [in negotiated procurements] than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). And, when a contract is to be awarded on a "best value" basis, procurement officials have "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Id. (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.")).

In addition to showing "a significant error in the procurement process," a protestor must show "that the error prejudiced it." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996); see also Bannum, 404 F.3d at 1351 (holding that if the procuring agency's decision lacked a rational basis or was made in violation of the applicable statutes, regulations, or procedures, the court must then "determine, as a factual matter, if the bid protester was prejudiced by that conduct"). In a postaward bid protest, "a protester must show that there was a 'substantial chance' it would have received the contract award absent the alleged error." Banknote, 365 F.3d at 1350 (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)); see also Data Gen., 78 F.3d at 1562 ("[T]o establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract."). This test for establishing prejudice "is more lenient than showing actual causation, that is, showing that but for the errors [the protestor] would have won the contract." Bannum, 404 F.3d at 1358.

## III. ANALYSIS

Criterion argues that the CO erred by failing to abide by the terms of the solicitation, seek clarification, and waive an informality and minor irregularity. As a result of these purported errors, Criterion further argues that it is entitled to injunctive relief.

### A. Compliance With the Solicitation

Criterion first argues that its protest should be sustained because the CO deviated from the solicitation requirement to seek clarification when a discrepancy existed between an offeror's Scoring Worksheet and supporting documents. See AR 146-47 (explaining that the CO "verif[ies] that a support document exists for all the evaluation elements in accordance with the Offeror's [Scoring Worksheet]" and noting that "[a]ny discrepancies will be treated as clarifications"). Criterion asserts that the CO was obligated to seek clarification because its proposal contained such a discrepancy: Criterion claimed the points but did not submit the requisite supporting materials. Defendant responds that Criterion conflates solicitation provisions concerning the initial screening and the verification process, which are step two and step four in the evaluation process described above. Specifically, defendant asserts that the CO was only obligated to seek clarification regarding discrepancies at the initial screening stage, which was when the CO determined whether the offeror submitted a document for each claimed point without reviewing the substance of the document. Based on that understanding, defendant contends that the CO complied with the terms of the solicitation because there was no

discrepancy at the screening stage since Criterion submitted documents purporting to substantiate its points for CAS certification.

There is no dispute that "a fundamental tenet of procurement law [is] that proposals must be evaluated in accordance with the terms of the solicitation." Ashbritt, Inc. v. United States, 87 Fed. Cl. 344, 374 (2009). But Criterion has not shown that the CO failed to abide by the solicitation terms. The CO, according to the solicitation, was only required to treat discrepancies between the Scoring Worksheet and submitted materials as mandating clarification when performing step two of the evaluation process: determining whether there was a document submitted for the claimed points. AR 146-47. While performing that step, the CO's lone task was to determine whether a supporting document was present; the CO did not consider whether the substance of the provided document verified the claimed points—that determination was part of step four. Id.; see also supra Section I.A.2 (describing evaluation process). In short, the GSA's reference in the solicitation to a discrepancy that required clarification only pertained to whether the offeror had claimed points but failed to submit supporting documents. Criterion's error did not fall into that category; Criterion acknowledges submitting supporting documents, and the CO confirmed such a submission while performing step two of the evaluation process. AR 1393 (noting that a "matching file was provided within the offer as indicated in the submitted J.P-1" for Criterion's CAS component). Simply stated, there was no discrepancy for which the CO was obligated to treat as a clarification because the CO correctly found that "[a]ll files [were] accounted for in the proposal." Id. Thus, the CO's decision to not seek a clarification was in accord with the terms of the solicitation.

### B. Clarification

Criterion next argues that the CO abused his discretion by not seeking clarification regarding the incorrect audit materials. Specifically, Criterion asserts that the missing government audit could be redressed through a clarification because such an exchange would merely confirm the company's representation that it was eligible for the points rather than changing the terms of the proposal. Criterion further contends that the CO was obligated to seek that clarification because the discrepancy between the claimed points and the supporting materials was apparent. Defendant counters that Criterion's failure to provide the materials specified in the solicitation is not subject to clarification. Defendant also argues that the CO did not abuse his discretion by declining to seek clarification because the existence of the purported error is not apparent.

The FAR provides the framework for evaluating Criterion's argument that its protests should be sustained because the CO did not seek clarification regarding the missing government audit. "Clarifications are limited exchanges[] between the Government and offerors, that may occur when award without discussions is contemplated." FAR 15.306(a)(1). Indeed, "offerors may be given the opportunity to clarify certain aspects of proposals (e.g., the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors." FAR 15.306(a)(2) (emphasis added). Flowing from the permissive wording of the regulation, the CO's decision to seek (or not to seek) clarification from an offeror is within his discretion. Id.; see BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 509 (2013) ("[T]he

regulatory provisions regarding mistakes discovered before award in bids for negotiated procurements are largely discretionary."). But see Camden Shipping Corp. v. United States, 89 Fed. Cl. 433, 438 (2009) ("[T]he agency is required to seek clarification only in the case of a clerical error.").

The permissive nature of clarifications does not insulate from judicial review a CO's decision to not seek clarification. BCPeabody, 112 Fed. Cl. at 512 ("[The court] cannot accept the implication that there are never situations in which a contracting officer's discretion would be abused by a failure to seek clarification."). Defendant is correct that a critical component of evaluating a CO's decision to not seek clarification is whether the CO should have discerned that the protestor made an error rather than a deliberate decision. See Dell Fed. Sys. v. United States, 133 Fed. Cl. 92, 106 (2017) (deeming relevant the fact that the government "had notice that a clerical error had likely occurred"); Level 3 Commc'ns, LLC v. United States, 129 Fed. Cl. 487, 505 (2016) (giving weight to the fact that the offeror made representations in the proposal concerning the substance of the missing information); BCPeabody, 112 Fed. Cl. at 512 (considering that the offeror submitted a duplicate page and that the CO knew the substance of the missing information); Griffy's Landscape Maint. LLC v. United States, 46 Fed. Cl. 257, 259-60 (2000) (requiring clarification when the missing information "clearly indicate[d] a clerical mistake"). Indeed, Criterion has not provided (and the court is not aware of) any precedent in which the United States Court of Appeals for the Federal Circuit or this court held that a CO abused his discretion by not seeking clarification when the error was not apparent. Therefore, the obviousness of the error is an important aspect of determining whether the CO acted reasonably by not seeking clarification.

In light of the above, the CO appropriately exercised his discretion. First, Criterion fails to show that the CO had any reason to suspect that its submission of the private audit was an error rather than a deliberate choice.[4] Criterion does not direct the court to any evidence before the CO that suggested that the missing government audit was unintentionally omitted. Although Criterion avers that the error was apparent because it claimed the CAS points on the Scoring Worksheet without submitting the required documents, the fact that Criterion submitted a private audit undermines its position. Indeed, Criterion's submission of a private audit—despite the clear terms of the solicitation, including directly on-point questions and responses—strongly suggests an intentional decision rather than a mistake. Second, the CO's decision is also reasonable given that offerors were on notice that the GSA intended to "strictly enforce all of the proposal submission requirements." AR 402; see also id. at 107 ("Omission of any information from the proposal submission requirements may result in rejection of the offer."). To seek clarification from Criterion, CO would have had to disregard that directive, which would undermine the GSA's expressed interest in receiving accurate (and complete) proposals. Under these circumstances, Criterion fails to demonstrate that the CO abused his discretion by not seeking clarification.

---

[4] Although not known by the CO, Criterion admitted in a post-decision brief that the company (1) was apparently confused about what was required and (2) submitted what it thought the GSA asked for in the solicitation. See AR 1797.

### C.  Informality and Minor Irregularity

Finally, Criterion argues that the CO abused his discretion by not waiving its failure to submit the proper supporting documentation as an informality and minor irregularity pursuant to FAR 52.215-1.  Relying on an analogous provision in the FAR pertaining to sealed bid procurements, Criterion contends that the omission was an informality and minor irregularity because the missing government audit did not affect the substance of its accurate representation in the Scoring Worksheet that it had a DCAA audit.  Indeed, Criterion asserts that (1) it has a DCAA audit and (2) its private audit tracked the procedures used by the DCAA.  Criterion thus asserts that the CO was obligated to either waive the requirement that the supporting materials come from a government agency or permit Criterion to cure the deficiency by submitting its DCAA audit materials.  Defendant responds by arguing that the requirement for a government audit was a material component such that the CO could not waive the condition.

The incorporation of FAR 52.215-1 into the solicitation permitted, but did not require, the CO to waive informalities or minor irregularities.  See FAR 52.215-1(f)(3) ("may waive"); see also Andersen Consulting v. United States, 959 F.2d 929, 932 (Fed. Cir. 1992) (explaining that use of the word "may" permits an agency to use its discretion).  Thus, the CO's decision to not waive the deficiency is reviewed for abuse of discretion.  Progressive Indus., Inc. v. United States, 129 Fed. Cl. 457, 474 (2016) (reviewing analogous provision applicable to sealed bids for abuse of discretion).

Criterion fails to demonstrate that the CO abused his discretion by not waiving the purported informality and minor irregularity.  Assuming, for the sake of argument, that Criterion's submission of a private audit was an informality and minor irregularity, there were strong factors counseling against waiving the requirement for the government audit.  First, Criterion receiving a waiver would undermine the GSA's interest in ensuring that offerors submit compliant offers.  The GSA stressed this objective in this solicitation by informing offerors that it (1) would strictly enforce proposal requirements and (2) might reject any proposal omitting required information.  Despite these warnings, Criterion did not comply with the guidance that a private audit was insufficient.  The nature of Criterion's non-compliance—failing to follow an explicit (and repeated) instruction—weighs against a waiver.  Second, the CO providing a waiver would be ill-advised given that there is no indication he had the means to assess whether Criterion's private audit is the functional equivalent to the required government audit.  The GSA plainly afforded significance to offerors having a robust accounting system and chose government audits as a method of evaluating those systems.  Although Criterion's auditor used the government form and purportedly followed government procedures, the CO could not discern the accuracy of the submission or the rigor with which the private accounting firm conducted its audit.  And to the extent that Criterion is arguing that the GSA's decision to not accept private audits was unreasonable, the company has waived the right to challenge the requirements of the solicitation by not challenging the requirement before the proposal submission deadline.  See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("A party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").

### D.  Summary

In sum, Criterion fails to demonstrate that the CO erred or that its protest should otherwise be sustained.  Because Criterion does not succeed on the merits of its protest, Criterion is entitled to neither costs nor injunctive relief.  See ARxIUM, Inc. v. United States, 136 Fed. Cl. 188, 198 (2018) ("A lack of success on the merits . . . obviously precludes the possibility of an injunction."); Q Integrated Cos. v. United States, 132 Fed. Cl. 638, 642-43 (2017) ("A protestor thus must prevail on the merits at least in part before the court can grant an award of bid preparation and proposal costs.").

## IV.  CONCLUSION

For the reasons discussed above, the court **DENIES** Criterion's motion for judgment on the administrative record and **GRANTS** defendant's cross-motion for judgment on the administrative record.  Criterion's protest is **DISMISSED.**  No costs.  The clerk is directed to enter judgment accordingly.

The court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which all the parties agree. Then, by **no later than Thursday, September 27, 2018**, the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge